UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM T. LATHAM, JR.,

                Plaintiff,          Civil Action No. 16-10690
                                        Honorable Paul D. Borman
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 14]

Plaintiff William T. Latham, Jr. ("Latham") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [11, 14], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

## I.     RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Latham is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [14] be GRANTED, Latham's Motion for Summary Judgment [11] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.    REPORT

### A.    Procedural History

On March 19, 2013, Latham filed an application for SSI, alleging a disability onset date of September 24, 2011.  (Tr. 106-11).  This application was denied initially on June 26, 2013. (Tr. 62-65).  Latham filed a timely request for an administrative hearing, which was held on September 12, 2014, before ALJ B. Lloyd Blair.  (Tr. 31-50).  Latham, who was represented by attorney Kenneth Laritz, testified at the hearing, as did vocational expert Diane Regan.  (*Id.*).  On October 28, 2014, the ALJ issued a written decision finding that Latham is not disabled under the Act.  (Tr. 14-26).  On February 8, 2016, the Appeals Council denied review.  (Tr. 1-5).  Latham timely filed for judicial review of the final decision on February 25, 2016.  (Doc. #1).

### B.    Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in

the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at \*7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C.     Background

#### 1.     Latham's Reports and Testimony

At the time of the September 2014 administrative hearing, Latham was 47 years old, and at 6'3" tall, weighed 230 pounds. (Tr. 35-36). He lived in a two-story house with his girlfriend and her three children. (Tr. 41). He completed the tenth grade but had no further education. (Tr. 36). He worked "under the table" as a stock worker for approximately eight years, but stopped working after he was in a car accident on September 24, 2011. (Tr. 36-37).

Latham alleges disability as a result of back, neck, and knee pain, a closed head injury, and migraines (all of which allegedly stemmed from the September 2011 car accident). (Tr. 38, 125). He testified that he underwent physical therapy (which helped somewhat) and received injections (which did not help), but he primarily relied on narcotic pain medication (Vicodin). (Tr. 38). Latham further testified that his physicians "wanted to do" back surgery, but he was not interested. (Tr. 38). Latham rated his back pain as a 7 or 8 (out of 10) with medication. (Tr.

39).   He wears a brace on his left knee and testified that he has used a cane since his car accident.[1]   (Tr. 40).   According to Latham, he can lift "about 10 pounds," stand for only a couple of minutes at a time, and walk only a "couple of steps" before he has to sit down.   (Tr. 43-44).

Latham does not perform any household chores, such as cooking, laundry, or shopping for groceries.   (Tr. 42, 148).   He has no problems with personal care, however, and is able to socialize with family and friends.   (Tr. 42, 147, 150).   When asked to describe his daily activities, Latham indicated that he helps care for the three children in his home, tries "to work out a little bit," and otherwise does very little.   (Tr. 42-43).   He does not drive because his license has been suspended.   (Tr. 36).   He is able to ride in a car, however, and regularly attends events at his local community center.   (Tr. 149-50).

### 2.     Medical Evidence

The Court has thoroughly reviewed Latham's medical record.   In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3.     Vocational Expert's Testimony

Diane Regan testified as an independent vocational expert ("VE") at the administrative hearing.   (Tr. 46-50).   The ALJ asked the VE to imagine a claimant of Latham's age, education, and work experience who could perform light work, with the following additional limitations: occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; occasional kneeling, crouching, crawling, or balancing; no walking on uneven surfaces; occasional reaching overhead, bending, twisting, and turning at the waist or neck; no commercial driving; no use of foot pedals; requires a cane to ambulate; limited to only simple unskilled work; and cannot

---

[1] In a March 2013 disability field office report, however, it was noted that Latham appeared to walk with a normal gait and did not use an assistive device.   (Tr. 122).

perform jobs involving concentration, detailed tasks, multi-tasking, reading, computing/calculating, or problem-solving. (Tr. 47-48). The VE testified that the hypothetical individual would be capable of working in the jobs of packer (200,000 jobs nationally), sorter (200,000 jobs), and small products assembler (250,000 jobs). (Tr. 48). Upon questioning by Latham's attorney, the VE further testified that if the hypothetical individual required a cane to balance – in addition to while ambulating – all jobs would be eliminated. (Tr. 49).

### D.    The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Latham is not disabled under the Act. At Step One, the ALJ found that Latham has not engaged in substantial gainful activity since March 19, 2013 (the application date). (Tr. 16). At Step Two, the ALJ found that Latham has the severe impairments of lumbar disc protrusion at L2-L3, cervical protrusion at C3-C4, history of closed head injury, adjustment disorder with anxiety, depression, and a cognitive disorder. (*Id.*). At Step Three, the ALJ found that Latham's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Latham's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; occasional kneeling, crouching, crawling, or balancing; no walking on uneven surfaces; occasional reaching overhead, bending, twisting, and turning at the waist or neck; no commercial driving; no use of foot pedals; requires a cane to ambulate; limited to only simple unskilled work; and cannot perform jobs involving concentration, detailed tasks, multi-tasking, reading, computing/calculating, or problem-solving. (Tr. 18).

At Step Four, the ALJ determined that Latham has no past relevant work. (Tr. 24). At

Step Five, the ALJ determined, based in part on the VE's testimony, that Latham is capable of performing a significant number of jobs that exist in the national economy. (Tr. 25). As a result, the ALJ concluded that Latham is not disabled under the Act. (*Id.*).

### E.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13;

*Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).   If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

### F.    Analysis

As set forth above, the ALJ determined that Latham has the RFC to perform light work, with the following additional limitations:  occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; occasional kneeling, crouching, crawling, or balancing; no walking on uneven surfaces; occasional reaching overhead, bending, twisting, and turning at the waist or neck; no commercial driving; no use of foot pedals; requires a cane to ambulate; limited to only simple unskilled work; and cannot perform jobs involving concentration, detailed tasks, multi-tasking, reading, computing/calculating, or problem-solving.  (Tr. 18).

In his motion, Latham argues that the ALJ's RFC assessment is not supported by

7

substantial evidence because the ALJ:  (1) improperly evaluated his credibility; (2) improperly weighed the medical opinion evidence; (3) created an internally inconsistent RFC; and (4) failed to adequately account for his moderate limitations in concentration, persistence, or pace.  (Doc. #11 at 12-21).  Each of these arguments is addressed below.

### 1.    The ALJ Properly Assessed Latham's Credibility

Latham first argues that the ALJ's credibility analysis was deficient.  (*Id.* at 12-17). Courts have recognized that determinations of credibility related to a claimant's subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'"  *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible.  *Soc. Sec. Rul. 96-7*, 1996 WL 374186, *1 (July 2, 1996)[2]; *see also* 20 C.F.R. §416.929.

---

[2] Latham asserts that the ALJ erred by applying Social Security Ruling ("SSR") 96-7p instead of the ruling that superseded it, SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  (Doc. #11 at 12-13).  As the Commissioner points out, however, the ALJ issued his decision in October 2014, and SSR 16-3p did not become effective until March 16, 2016.  (Doc. #14 at 10).  Thus, the ALJ

Here, the ALJ articulated several facts in support of his conclusion that Latham was less than fully credible.  First, the ALJ noted that, despite the fact that Latham alleged disability as a result of injuries he sustained in the September 24, 2011 car accident – including reported back, neck, knee, and shoulder injuries – he was treated in the emergency room that day for only a small laceration over his right eye and a left-sided headache, and was released a few hours later.  (Tr. 19, 21, 190).  He reported no musculoskeletal pain, and his back was non-tender on examination, with normal range of motion and sensation.  (Tr. 190-91).  The ALJ further noted that a CT of Latham's cervical spine showed no acute findings, with only degenerative changes (including mild stenosis at C5-C6 and mild-to-moderate stenosis at C6-C7).  (Tr. 22, 200).  This was a valid consideration in evaluating Latham's credibility.  *See Spelic v. Comm'r of Soc. Sec.*, 2015 WL 9286768, at *12 (E.D. Mich. Nov. 23, 2015) (finding ALJ's credibility determination well-supported where there was evidence of claimant's tendency to exaggerate and inaccurately report her symptoms).

The ALJ also considered the fact that, although Latham had received regular treatment for his allegedly disabling conditions, that treatment was "essentially routine and conservative in nature."  (Tr. 21).  Specifically, Latham began seeing Jeffrey Parker, M.D. on October 7, 2011, complaining of headaches, memory loss, and mood swings, along with pain of the lumbar and cervical spines and radiation to the left upper and lower extremities.  (Tr. 203).  On examination, Latham had limited range of motion in the cervical and lumbar spines and left shoulder, and he walked with a limp.  (Tr. 205).  As the ALJ noted, however, with physical therapy and pain medication, Latham's functioning appeared to improve.  (Tr. 22).  Indeed, by December 2011,

---

did not err by applying SSR 96-7p.  *See Cole v. Comm'r of Soc. Sec.*, 2016 WL 3647982, at *11 n. 2 (E.D. Mich. June 17, 2016) ("SSR 96-7p was rescinded and superseded by SSR 16-3p on March [16], 2016.  However, because the ALJ's decision in this matter was rendered prior to that date, the ALJ was obliged to comply with SSR 96-7p.") (internal citation omitted).

Latham had full range of motion in the cervical spine, and his neurological examination was normal (despite his continued complaints of headaches, insomnia, and memory loss). (Tr. 207). In January 2012, it was noted that imaging of his left shoulder and left knee showed no rotator cuff injury and no meniscus tear, respectively, and he was diagnosed with only left shoulder and left knee sprains. (Tr. 257). By February 2012, Dr. Parker noted that Latham's left knee pain had "somewhat subsided," he was showing increased range of motion in the cervical and lumbar spines, and he had full range of motion in both knees. (Tr. 255). Thus, in assessing the credibility of Latham's allegations of disability, it was reasonable for the ALJ to consider the fact that his conditions were improving with only routine and conservative treatment.[3] *See, e.g. Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (finding that the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving conservative treatment); *McKenzie v. Comm'r of Soc. Sec.*, 2000 WL 687680, at *4 (6th Cir. 2000) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment.").

The ALJ also found Latham's allegations of disability less than fully credible because he failed to follow up on recommendations made by his treating physicians. (Tr. 22). For example, in January 2012, when Latham continued to complain of back and neck pain, and imaging studies showed disc protrusions, Dr. Parker recommended that Latham be referred to a neurosurgeon, but Latham declined to follow up with such a specialist. (Tr. 257). In August

---

[3] Latham argues that the ALJ erred in discounting his credibility for this reason, asserting that "there is no requirement that an applicant for social security disability benefits undergo non-routine or surgical treatment to demonstrate the existence of his condition or symptoms." (Doc. #11 at 13). While it is true that a claimant can establish disability without undergoing surgery, the ALJ did not suggest otherwise, and the law makes clear that his consideration of the nature of Latham's treatment was appropriate. *See Wray v. Comm'r of Soc. Sec.*, 2014 WL 4410154, at *9 (E.D. Mich. Sept. 8, 2014) (ALJ properly considered conservative nature of treatment for allegedly disabling impairments in finding claimant not fully credible).

2012, Dr. Parker discussed with Latham additional "pain management procedures," but Latham refused such measures and again expressed reluctance to "undergo consultation regarding surgery." (Tr. 243). Similarly, in February 2013, Dr. Parker noted that Latham was "depressed because he cannot work and his pains continue"; thus, he referred him to a pain clinic and for a psychiatric consultation. (Tr. 234). As the ALJ noted, however, at Latham's next visit, he had not made either of these appointments. (Tr. 22, 232). The ALJ also noted that, when Latham's other treating physician, Craig Peppler, D.O., suggested he consider injection therapy, Latham declined, indicating that he wanted to continue with only a home exercise program and medication management. (Tr. 22, 265). Courts have recognized that a claimant's failure to follow prescribed or recommended treatment can weigh against allegations of disability. *See Farr v. Comm'r of Soc. Sec.*, 2016 WL 825872, at *4 (W.D. Mich. Mar. 3, 2016) (discounting claimant's credibility where he had "not always been compliant with recommended treatment"). For all of these reasons, the Court finds no error in the ALJ's credibility analysis.

## 2.    *The ALJ Properly Weighed the Medical Opinion Evidence*

As the ALJ noted, the record contains multiple opinions from Latham's treating physician, Dr. Parker, that he is disabled. (Tr. 23). Indeed, at Latham's first visit to Dr. Parker, on October 7, 2011, Dr. Parker opined that, until November 11, 2011, Latham was "disabled from employment, performing household chores, caring for his personal needs, caring for [his] children, and driving." (Tr. 206). Latham saw Dr. Parker many times over the following years, and, during the period of time following his application date, Dr. Parker continually wrote that Latham was "completely disabled." (Tr. 267, 268, 269, 270, 271). Latham now argues that the ALJ erred in giving little weight to Dr. Parker's opinion in this respect. (Doc. #11 at 13-15).

Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and

11

laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted).  But, while treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole.  *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence.").  If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

As an initial matter, the ALJ appropriately discounted Dr. Parker's opinion that Latham was "completely disabled" because this is a legal conclusion specifically reserved for the Commissioner.  *See Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 474 (6th Cir. 2008) ("[a] physician's opinion that a claimant is disabled is entitled to no deference because it is the prerogative of the Commissioner, not the treating physician, to make a disability determination."); *Duehring v. Comm'r of Soc. Sec.*, 2016 WL 865844, at *4 (E.D. Mich. Mar. 7, 2016) ("the ultimate disability determination is an issue reserved for the Commissioner; even if a doctor had opined that Plaintiff was disabled, such an opinion would be afforded no deference.").

That aside, the ALJ did, in fact, give good reasons for discounting Dr. Parker's opinion:

specifically, that his opinion was "unsupported by objective clinical findings as physical examinations show relatively minimal findings," and that his opinion appeared to be a "sympathetic opinion, based upon [Latham's] subjective complaints." (Tr. 23). Both of these reasons find ample support in the record. For example, as the ALJ noted, while the record reflected that Latham experienced tenderness and a somewhat reduced range of motion in the lumbar spine immediately after his car accident, Dr. Parker's physical examinations showed that his condition improved with physical therapy and the use of pain medication. (Tr. 23 (citing Tr. 207 (full range of motion in the cervical spine in December 2011), 252 (full range of motion in the cervical spine and both knees in March 2012), 240 (Latham "somewhat improved" in October 2012), 238 (full range of motion in the lumbar spine in November 2012)).

In response, Latham argues only that the ALJ erred by interpreting "raw medical data" when constructing his RFC, because Dr. Parker was the only medical professional who opined on his physical abilities, and the ALJ rejected his opinion. (Doc. #14 at 14-15). As the Commissioner points out, however, an ALJ does not necessarily err by weighing the evidence and reaching a conclusion about a claimant's physical RFC, despite the lack of a conclusive medical opinion on the issue. As this Court has stated:

> It is true that an ALJ should resist the temptation to substitute the ALJ's own interpretation of medical records for that of a physician who has examined the records. Nonetheless, at the same time, the Sixth Circuit … emphasized that the precedent does not even remotely suggest that an ALJ must, as a matter of law, seek out a physician's medical opinion. Thus, after the ALJ set forth good reasons for rejecting Dr. [Parker's] opinions, the ALJ did not need to seek out another physician's opinion.

*Muscott v. Colvin*, 2015 WL 7248670, at *4 (E.D. Mich. Oct. 29, 2015) (internal citations and quotations omitted). In short, the ALJ did not err by weighing all of the evidence and reaching a conclusion as to Latham's RFC, notwithstanding the lack of a definitive medical opinion. *See Spuhler v. Colvin*, 2014 WL 4856153, at *5 (E.D. Mich. Sept. 30, 2014) ("the ALJ was justified

in examining all of the evidence and determining [the claimant's] capacity, notwithstanding the absence of a conclusive medical opinion").  For all of these reasons, the ALJ's decision to give little weight to Dr. Parker's opinion is supported by substantial evidence.

### 3.    The RFC Finding is Not Internally Inconsistent

As set forth above, the ALJ found that Latham has the RFC to perform a reduced range of light work, but that he needs a cane to ambulate while doing so.[4]  (Tr. 18).  Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §416.967(b).  Latham now argues that "[t]he use of a cane to ambulate has been found to preclude light work in those instances in which a claimant's ability to lift or carry twenty pounds is adversely impacted by the cane use."  (Doc. #11 at 18 (citing *Jones v. Comm'r of Soc. Sec.*, 2012 WL 967509, at *5 (W.D. Mich. Feb. 8, 2012) and *Love v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 893, 907 (W.D. Mich. 2009)).  As set forth below, the Court finds both *Jones* and *Love* distinguishable, and sees no inherent inconsistency in the ALJ's RFC finding.

In *Jones*, the ALJ "acknowledge[d] that plaintiff had been prescribed a cane a few months before the administrative hearing, [but] did not include the use of a cane in plaintiff's RFC and provided no explanation for this omission."  *Jones*, 2012 WL 967509, at *5.  The court found that this was not harmless error, saying:  "The ALJ found that plaintiff could perform light work, which by definition requires lifting up to 20 pounds.  Plaintiff's use of a cane could affect his ability to perform such work."  *Id.*  The *Jones* court directed the ALJ, on remand, to "decide

---

[4] Latham argues – almost in passing – that he "required the cane for balance in addition to walking" and, thus, that the ALJ erred in failing to incorporate this limitation into the RFC. (Doc. #11 at 19).  Latham cites no evidence in support of this assertion, however, and the only indication of such a limitation is Latham's own hearing testimony (Tr. 44), which the ALJ supportably found less than fully credible for the reasons set forth in section II.F.1, *supra*.

14

whether plaintiff needs to use a cane for ambulation, and if so, whether plaintiff can perform light work while using this assistive device." *Id.* Unlike in *Jones*, the ALJ here specifically included the use of a cane for ambulating in Latham's RFC, and informed the VE of this limitation when posing the relevant hypothetical questions. (Tr. 18, 47-48). Given this expressed limitation, the VE testified that the hypothetical individual could perform the requirements of three light, unskilled jobs. (Tr. 48). Thus, *Jones* gets Latham nowhere.

In *Love*, the other case cited by Latham, the ALJ found that the claimant could "lift and carry up to 20 pounds occasionally and 10 pounds frequently" but "require[d] a 'hand-held assistive device' to ambulate." *Love*, 605 F. Supp. 2d at 907. The reviewing court found a "fundamental illogic to this determination," saying that it "does not doubt that Plaintiff can *lift* 20 pounds, but fails to comprehend how Plaintiff can *carry* 20 pounds if he requires a 'hand-held assistive device' to ambulate." *Id.* (emphasis in original). In the instant case, however, the ALJ did not specifically find that Latham can carry twenty pounds; rather, he found only that Latham can "perform light work as defined in 20 CFR 416.967(b)." (Tr. 18). It is true that light work requires lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §416.967(b). But, that definition says nothing at all about *carrying* twenty pounds, and *Love* made clear that there is nothing inconsistent about being able to *lift* twenty pounds and using a cane to ambulate. *See Love*, 605 F. Supp. 2d at 907. Moreover, to the extent there is any inconsistency at all between carrying ten pounds and using a cane to ambulate, the VE adequately addressed it by specifically testifying that Latham could perform a significant number of jobs in the national economy with those combined limitations. (Tr. 47-48). Thus, the Court finds no merit to Latham's argument that the RFC is internally inconsistent.

15

4.      *The RFC Finding Properly Accounted for Latham's*
*Moderate Limitations in Concentration, Persistence, or Pace*

With regard to concentration, persistence or pace ("CPP"), the ALJ found that Latham has moderate difficulties.  (Tr. 18).  As a result, in the RFC he ultimately adopted, the ALJ limited Latham to simple, unskilled work that does not require concentration, detailed tasks, multi-tasking, reading, computing, calculating, or problem-solving.  (Tr. 18).  Latham now argues that this limitation is inadequate because "an individual who is not able to concentrate would be unable to meet [] production quotas or to be on task 80-85% of the work day."  (Doc. #11 at 19).  The Court disagrees.

Where an ALJ finds that a claimant has CPP deficiencies, failure to account for such deficiencies in the hypothetical question may constitute reversible error.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 517 (6th Cir. 2010).  While an ALJ is not required to include any particular phrase or talismanic language in an RFC to properly account for a claimant's CPP limitations, the hypothetical limitations chosen by the ALJ must be supported by substantial evidence.  *See Barnes v. Comm'r of Soc. Sec.*, 2013 WL 6328835, at *14 (E.D. Mich. Dec. 5, 2013) (citing *Smith*, 307 F.3d at 378-79).  Because there is no bright-line rule requiring an ALJ to account for moderate limitations in CPP in a certain way,[5] the Court must determine whether – given the unique circumstances of this case – these limitations adequately accounted for Latham's moderate restriction in CPP.  *See Summers v. Comm'r of Soc. Sec.*, 2016 WL 3769377,

---

[5] Indeed, the Sixth Circuit recently held that where the ALJ finds a moderate limitation in concentration, it is not *per se* error for the ALJ to issue an RFC with only a limitation to "unskilled work."  *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) ("Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is per se insufficient to convey moderate limitations in [CPP].").  As with other aspects of an ALJ's decision, the question is simply whether the particular RFC limitation in question is supported by substantial evidence in the record.  *See Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682, at *7 (E.D. Mich. May 17, 2011); *Schalk v. Comm'r of Soc. Sec.*, 2011 WL 4406824, at *11 (E.D. Mich. Aug. 30, 2011).

at *7 (E.D. Mich. June 2, 2016); *Mortzfield v. Comm'r of Soc. Sec.*, 2014 WL 1304991, at *16 (E.D. Mich. Mar. 31, 2014).

The problem for Latham, however, is that all of the evidence he cites in support of a greater mental limitation than that found by the ALJ (Doc. #11 at 20-21) relates to a time when he was still suffering "residual[s] of a head injury," (Tr. 277), and, more importantly, significantly predates the relevant period of time.[6]  For example, Latham cites to a neuropsychological evaluation conducted between January and March 2012, during which he appeared slow and lethargic, had trouble remembering what he learned, and exhibited problems with attention to detail.[7]  (Doc. #11 at 20 (citing Tr. 221-28)).  This evidence is not relevant to the analysis, however, when Latham's application date was March 19, 2013, and when, around that time, he was not presenting "with any significant psychiatric symptoms, depression, anxiety, cognitive impairments or problems with short term working memory or concentration that would affect his ability to do work related activities."  (Tr. 263).

Moreover, even if the Court were to consider medical evidence pre-dating Latham's application date it would not change the outcome as there nevertheless is substantial evidence supporting the mental limitations found by the ALJ.  First, the ALJ appropriately considered that

---

[6] "Proper inquiry in an application for SSI benefits is whether claimant was disabled on or after the application date."  *Miller v. Comm'r of Soc. Sec.*, 2009 WL 997312, at *6 n. 2 (E.D. Mich. Apr. 14, 2009) (citing *Casey v. Secretary*, 987 F.2d 1230 (6th Cir. 1993)).  In this case, then, Latham had the burden of proving that he was disabled between March 19, 2013, the SSI application date, and October 28, 2014, the date of the ALJ's decision, in order to be entitled to SSI benefits.  *Id.*

[7] As the ALJ noted, however, while this assessment showed some "borderline" results, it also showed a "'significant probability' that [Latham] endorsed items inaccurately by reporting more symptoms than and behaviors than seen in most psychiatric patients."  (Tr. 20, 23, 224, 226).  The ALJ also referenced findings during this evaluation that Latham's visual memory was more developed than his auditory memory, and that although Latham "reported he had problems with attention and concentration [] Dr. Van Horn [found] his memory [] to be ok [] and his incidental memory was intact []."  (Tr. 20, 225-26).

less than three months after Latham's accident, his "[n]eurological examination was normal despite [his] complaints of headaches, insomnia and memory loss."  (Tr. 22, 207).  This was consistent with other evidence referenced by the ALJ, including the CT performed on the day of the car accident (which revealed "no acute intracranial abnormality") and the fact that Latham's hospital stay that day lasted only a few hours.  (Tr. 19, 190, 200).  The ALJ also noted that although Latham reported headaches, memory/organizational problems and mood swings, Dr. Parker regularly found him to be fully oriented.  (Tr. 20-21, 208, 232, 234, 236, 238, 240, 243, 247, 250, 257, 259).  The Court finds most significant the ALJ's discussion of a June 15, 2013 consultative psychological examination.  As the ALJ explained, examiners found that Latham "spoke clearly and articulately and denied any major depression or anxiety interfering with his functioning….During the mental status examination, his affect was appropriate with a calm relaxed mood.  He could repeat six digits forward and four backward and could recall one out of three items and perform simple calculations."  (Tr. 21, 262-63).  The examiners also noted that Latham's stream of mental activity was "logical and organized," that he "was able to give a logical sequential history and description of his daily activities," and that he was "not currently presenting with any significant psychiatric symptoms … cognitive impairments or problems with short term memory or concentration that would affect his ability to do work related activities." (*Id.*).

The foregoing constitutes substantial evidence in support of the ALJ's mental RFC determination, which included numerous significant limitations, and Latham has not explained how the record in this case justified more restrictive ones.  *See Mortzfield*, 2014 WL 1304991, at *16 ("Here, plaintiff argues that the ALJ's limitation of plaintiff to 'simple, routine, and repetitive tasks' does not sufficiently account for the moderate impairment in [CPP].  Plaintiff

does not, however, satisfactorily explain how his moderate impairment in [CPP] is not fully accounted for in this RFC."). Instead, Latham simply argues that "an individual who is not able to concentrate would not be able to meet the production quotas or to be on task 80-85% of the workday." (Doc. #11 at 19). But Latham provides no legal support for this conclusory assertion, and essentially ignores the ALJ's mention of the types of jobs he did not believe Latham could perform given his concentration limitations, *i.e.*, "detailed tasks, multi-tasking, reading, computing/calculating, or problem-solving." (Tr. 18). The ALJ was clearly not indicating that Latham was unable to perform any work whatsoever.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.    CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [14] be GRANTED, Latham's Motion for Summary Judgment [11] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: December 27, 2016                          s/David R. Grand
Ann Arbor, Michigan                               DAVID R. GRAND
                                                  United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*,

638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 27, 2016.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager